Eric C. Deters (0038050)

## IN THE COURT OF COMMON PLEAS
## HAMILTON COUNTY OHIO
## CIVIL DIVISION

| | |
|---|---|
| CATHY BEIL <br> 6780 East Ben Road <br> Burlington, KY 41005 <br><br> and <br><br> WAYNE BEIL <br> 6780 East Ben Road <br> Burlington, KY 41005 <br><br> Plaintiffs, <br><br> v. <br><br> **ABUBAKAR ATIQ DURRANI, M.D.,** <br> 6905 Burlington Pike <br> Florence, Kentucky 41042 <br> (Serve via Certified Mail) <br><br> and <br><br> CENTER FOR ADVANCED SPINE <br> TECHNOLOGIES, INC. <br> 6905 Burlington Pike <br> Florence, Kentucky 41042 <br><br> Serve: CT Corporation System <br> 1300 East 9th St. Ste. 1010 <br> Cleveland, OH 44114 <br> (Serve via Certified Mail) <br><br> and <br><br> WEST CHESTER HOSPITAL, LLC <br> 7700 University Drive <br> West Chester, Ohio 45069 <br><br> Serve: GH&R BUSINESS SVCS., INC. <br> 511 Walnut Street | Case No. <br><br> Judge <br><br><br><br><br> **COMPLAINT & JURY DEMAND** |

1

| | |
|---|---|
| 1900 Fifth Third Center<br>Cincinnati, OH 45202<br>(Serve via Certified Mail)<br><br>and<br><br>UC HEALTH<br>Serve: GH&R BUSINESS SVCS., INC.<br>511 Walnut Street<br>1900 Fifth Third Center<br>Cincinnati, OH 45202<br>(Serve via Certified Mail)<br><br>    Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

Now come the Plaintiffs, Cathy Beil and Wayne Beil by and through counsel, and for their Complaint with Jury Demand, state as follows:

**PARTIES, JURISDICTION AND VENUE**

1. The incidents giving rise to this action and the subject matter of the Complaint arise out of medical treatment, acts and omissions, and conduct that occurred in Hamilton County, Ohio.

2. At all times relevant, Plaintiff Cathy Beil ("Plaintiff") was an individual resident and citizen of Boone County, Kentucky.

3. At all times relevant, Plaintiff Wayne Beil ("Plaintiff") was an individual resident and citizen of Boone County, Kentucky.

4. At all times relevant, Cathy Beil was married to Wayne Beil ("Plaintiffs")

5. At all times relevant, Defendant Abubakar Atiq Durrani, M. D. ("Dr. Durrani") was licensed to and did in fact practice medicine in the States of Ohio and Kentucky.

ELECTRONICALLY FILED 04/10/2013 16:02 / IFOJ / A 1302781 / CONFIRMATION NUMBER 239947

6. At all times relevant, Center for Advanced Spine Technologies, Inc. ("CAST"), was licensed to and did in fact perform medical services in the State of Ohio and the Commonwealth of Kentucky, and was and is a corporation authorized to transact business in the both states.

7. At all time relevant, West Chester Hospital ("West Chester"), registered at the time of the incident as West Chester Medical Center, was a corporation authorized to transact business and perform medical services in the State of Ohio.

8. At all times relevant, UC Health was a corporation authorized to transact business and manage medical services in the State of Ohio.

9. The amount in controversy exceeds the jurisdictional threshold of this Court.

10. Plaintiff reserves the right to file an Amended Complaint as this Complaint is being filed, inter alia, to preserve all applicable statutes of limitation, and remedies under law.

## BACKGROUND

11. Plaintiffs incorporate by reference each and every allegation in the paragraphs above.

12. In April, 2009 Cathy Beil was referred to Dr. Durrani by her primary care physician, Troy Schumann, M.D. She had a history of neck and low back pain.

13. Dr. Durrani performed a physical examination and reviewed radiographic studies. He convinced Cathy Beil that she had severe scoliosis that required immediate surgery.

14. Durrani convinced Plaintiffs that if Cathy did not undergo surgery immediately, she would end up in wheelchair.

3

15. Dr. Durrani recommended a direct lumbar interbody fusion at L2 through L3 and L1 through L2 along with a simultaneous minimal access posterior spinal fusion from T9 to L3.

16. The surgery was performed on November 20, 2009 at West Chester Hospital [the "first surgery"].

17. The first surgery by Defendants was medically unnecessary

18. During the first surgery, Defendants negligently and improperly placed hardware in Plaintiff, causing permanent harm.

19. During the first surgery, Defendants experimentally used BMP-2/Infuse without Plaintiffs consent or knowledge.

20. At all times relevant, Defendants were in exclusive control of amount and ratio of BMP-2/Infuse bone graft that experimentally implanted into Plaintiff at West Chester Hospital.

21. At all times relevant, Defendants were responsible for the selection, modification, bending, cutting, sizing and placement of the rods, screws and hardware Durrani implanted into Plaintiff.

22. Defendants did not obtain Plaintiff's consent to use BMP-2/Infuse prior to the first surgery.

23. Defendants did not disclose their intent to use BMP-2/Infuse, and further, did not disclose their intent to use BMP-2/Infuse in a way not approved by the FDA.

24. BMP-2 is manufactured, marketed, sold and distributed under the trade name "Infuse" by Medtronic.

25. Dr. Durrani is a consultant for Medtronic.

4

26. Defendants did not inform Plaintiffs of Durrani's financial interest, conflicts of interest or consulting arrangement with Medtronic.

27. For use in spinal surgery, BMP-2/Infuse is approved by the FDA for a limited procedure, performed on a limited area of the spine, using specific components. Specifically, the FDA approved Infuse for one procedure of the spine: Anterior Lumbar Interbody Fusion ("ALIF" or "Anterior" approach); and only in one area of the spine: L4 to S1; and only when used in conjunction with FDA-Approved Components: LT-CAGE Lumbar Tapered Fusion Device Component ("LT-CAGE")

28. Use of Infuse in cervical or thoracic surgery, or use through the back (posterior), or side (lateral), or on areas of the spine outside of the L4-S1 region (e.g., the cervical spine), or using components other than or in addition to the LT-CAGE is not approved by the FDA, and thus such procedures and/or use of non-FDA approved componentry is termed "off-label."

29. Defendant's use of BMP-2 in Plaintiff's thoracic spine was "off label" and without informed consent.

30. Defendant's use of Infuse/BMP-2 combined with a posterior surgical approach was not approved by the FDA, and thus "off label."

31. When used off-label, Infuse frequently causes excessive or uncontrolled (also referred to as "ectopic" or "exuberant") bone growth on or around the spinal cord. When nerves are compressed by such excessive bone growth, a patient can experience, among other adverse events, intractable pain, paralysis, spasms, and cramps in limbs.

32. The product packaging for BMP-2/Infuse indicates it causes an increased risk of cancer four (4) times greater than other bone graft alternatives.

33. During the first surgery, Defendants also did not use the LT-CAGE.

34. Also during the first surgery, Durrani did not use an "Anterior" surgical approach, in contradiction to what was approved by the FDA.

35. Defendants did not obtain Plaintiff's informed consent to use BMP-2/Infuse "off label" in the surgery.

36. Defendants improperly used BMP-2/Infuse on Plaintiff, causing harm.

37. Dr. Durrani promised that Plaintiff would experience immediate pain relief following surgery. Instead, her pain has been far worse and more extreme since the first surgery.

38. Plaintiff was misled by Defendants concerning the extent, nature and duration of the surgery that was to be performed.

39. Plaintiff's post-operative consultation occurred with Dr. Durrani at CAST.

40. Dr. Durrani misled Plaintiff about the after-effects of BMP/Infuse and the actual nature and extent of the surgery Defendants had performed.

41. During the surgery, Cathy Beil also contracted MRSA and her would site became infected.

42. Upon information and belief, Dr. Durrani's dog "Hank" also had MRSA at or near the same time as it was transferred to Mr. Marshall.

43. "Hank" was present at all office visits at CAST wherein Dr. Durrani cared for and treated Plaintiff.

6

44. After the surgery, Cathy Beil's symptoms and infection became significantly worse and she developed purulent drainage from the infected surgical wound site.

45. At the follow up appointments at CAST, Dr. Durrani assured Plaintiff that when she was finally healed from this first surgery, her pain and immobility would resolve, and her condition would dramatically improve.

46. Plaintiff continued to complain to Dr. Durrani at his offices at CAST that since the first surgery, the pain and infection had become so extreme, it was unbearable.

47. The pain, numbness and immobility did not resolve, and Plaintiff continued to trust Dr. Durrani that over time, these conditions would improve.

48. Dr. Durrnai had no rational explanation for Plaintiff's condition, and was unavailable to care for her infection becuase he was out of the Country.

49. After unsuccessful follow ups with Dr. Durrani, Cathy Beil saw Dr. Michael Rohmiller for a second opinion.

50. In discussions with Dr. Rohmiller, Cathy Beil discovered, for the first time, that her scoliosis was not severe, was not significant and that surgery performed by Defendants was not medically necessary.

51. Dr. Rohmiller also found that the hardware and screws implanted by Defendants were loose, improperly implanted, and the source and cause of her pain and symptomology.

52. In March 2011, Dr. Rohmiller performed a revision surgery to correct the loose and improperly implanted hardware that had been installed by Defendants.

53. This second surgery would have never been required if Defendants had properly treated Plaintiff in the first place.

ELECTRONICALLY FILED 04/10/2013 16:02 / IFOJ / A 1302781 / CONFIRMATION NUMBER 239947

54. Defendants therefore, fell below the accepted standard of care in misdiagnosing, experimenting, and performing medically unnecessary surgery on Cathy Beil that was not medically indicated, which resulted in an exacerbation of her low back pain and development of post-operative wound infection.

55. Defendants conduct has proximately caused the worsening of Cathy Beil's back pain, post-operative wound infection, and persistent pain and suffering and Plaintiffs loss of consortium and enjoyment of life, and other damages as described in this Complaint.

## COUNT I: NEGLIGENCE – DOCTOR DURRANI & CAST

56. Plaintiffs incorporate by reference each and every allegation in the paragraphs above.

57. Defendants owed Plaintiffs the duty to exercise the degree of skill, care, and diligence of an ordinary prudent health care provider would have exercised under like or similar circumstances.

58. Defendants breached his duty causing damages by failing to exercise the requisite degree of skill, care and diligence that an ordinary prudent health care provider would have exercised under same or similar circumstances through, among other things, the negligent surgery, improper diagnosis, medical mismanagement and mistreatment Cathy Beil, including but not limited to unnecessary surgery, failed surgery, improper performance of surgery, and improper follow up care addressing the patient's concerns.

59. As a direct and proximate result of the aforementioned acts and omissions by the Defendants, Plaintiffs sustained severe and grievous injuries, prolonged pain and

8

suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of the ability to perform usual and customary activities and incurred substantial medical expenses and treatment.

## COUNT II: NEGLIGENCE - WEST CHESTER HOSPITAL & UC HEALTH

60. Plaintiffs incorporate by reference each and every allegation in the paragraphs above

61. Defendants owed their patient, Cathy Beil, the duty to exercise the degree of skill, care, and diligence an ordinarily prudent health care provider would have exercised under like or similar circumstances.

62. Defendants breached that duty by failing to exercise the requisite degree of skill, care, and diligence that an ordinarily prudent health care provider would have exercised under same or similar circumstances through, among other things, its negligent medical mismanagement, negligent diagnosis and mistreatment of Plaintiffs.

63. As a direct and proximate result of the aforementioned acts and omissions by the Defendants, Plaintiff sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of the ability to perform usual and customary activities and incurred substantial medical expenses and treatment.

## COUNT III: VICARIOUS LIABLITY - CAST, WEST CHESTER HOSPITAL & UC HEALTH

9

64. Plaintiffs incorporate by reference each and every allegation in the paragraphs above.

65. At all times relevant, Defendant Dr. Durrani was a staff physician, agent, and/or employee of CAST and/or West Chester Hospital, which is owned and/or managed by UC Health.

66. Upon information and belief, Drs. Durrani is a shareholder, owner, director and/or member manager of CAST and West Chester Hospital, and therefore has a direct financial motive and interest in CAST, West Chester Hospital and/or UC Health profits.

67. Defendant Durrani was performing within the scope of employment, agency relationship, and/or for the financial gain of the Defendant when dealing with the Plaintiffs.

68. Defendants are responsible for harm caused by acts of employees, agents and owners which conduct occurred within the scope of employment under the theory of respondeat superior, ostensible agency, and/or vicarious liability.

69. Defendants are liable for the negligent acts and omissions of Defendants Durrani alleged in this Complaint.

70. As a direct and proximate result of these Defendants acts and omissions by and through its agents and/or employees, Plaintiffs sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of the ability to perform usual and customary activities and incurred substantial medical expenses and treatment.

**COUNT IV: NEGLIGENT HIRING, RETENTION, CREDENTIALING & SUPERVISION - CAST, WEST CHESTER HOSPITAL & UC HEALTH**

10

71. Plaintiffs incorporate by reference each and every allegation in the paragraphs above.

72. Defendants were responsible for the hiring, credentialing, screening, oversight, and conduct of its residents, doctors, nurses and those doctors with privileges at the Hospital.

73. Defendants were in a unique position to control, monitor, and oversee the conduct and consequences of the residents, doctors, nurses and those with privileges, and owed a duty to Plaintiffs to exercise said control.

74. Defendants provided Dr. Durrani inter alia, financial support, control, medical facilities, billing and insurance payment support, staff support, medicines, and tangible items for use on patients.

75. Defendants knew, or had reason to know, that Dr. Durrani had his privileges terminated and/or refused at Christ Hospital, Children's Hospital, Good Samaritan Hospital, Deaconess Hospital, and/or St. Elizabeth Hospitals prior to West Chester Hospital and UC Health providing Dr. Durrani privileges at the facility.

76. West Chester Hospital and UC Health currently continue to permit Dr. Durrani to admit patients, and to perform surgery at West Chester Hospital.

77. CAST, West Chester and UC Health continue to employ Dr. Durrani.

78. Defendants breached their duty to Plaintiff, inter alia, by not controlling the actions of the Dr. Durrani and doctors, nurses, staff, and those with privileges, during the medical treatment of Cathy Beil at CAST and West Chester Hospital.

79. As a direct and proximate result of the acts and omissions described herein, including but not limited to failure to properly supervise medical treatment by the

ELECTRONICALLY FILED 04/10/2013 16:02 / IFOJ / A 1302781 / CONFIRMATION NUMBER 239947

residents, doctors, nurses, and those with privileges by West Chester Hospital and/or UC Health, Plaintiffs sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of the ability to perform usual and customary activities and incurred substantial medical expenses and treatment.

### COUNT V: BATTERY - DEFENDANTS DURRANI

80. Plaintiffs incorporate, adopt and allege as if fully restated herein, those allegations contained in the above paragraphs.

81. Defendant Durrani committed battery against the Plaintiff Cathy Beil by performing a surgery that was unnecessary, contraindicated for Plaintiff's medical condition, grossly sloppy, negligent, reckless, and for which he did not properly obtain informed consent, inter alia, by the failure to provide information to Plaintiff.

82. Plaintiff would not have agreed to the surgeries if he knew that the surgeries were unnecessary, not medically indicated, and would be performed in a reckless, sloppy, and aberrant way.

83. As a direct and proximate result of the aforementioned battery by Defendant, Plaintiffs were caused to sustain severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, the loss of ability to perform usual and customary activities and Plaintiff have incurred and will continue to incur substantial medical expenses and treatment.

### COUNT VI: FRAUD - DEFENDANT DURRANI, CAST, WEST CHESTER HOSPITAL & UC HEALTH

12

84. Plaintiffs incorporate by reference each and every allegation in the paragraphs above.

85. Defendants made material, false representations to Plaintiffs and their insurance company, APWU Health Plans, related to Cathy Beil's care and treatment, as outlined in this Complaint.

86. Defendants knew or should have known such representations were false, and/or made the misrepresentations with such utter disregard and recklessness as to whether they were true or false that knowledge of their falsity may be inferred.

87. Defendants made the misrepresentations both before and after the surgeries with the intent of misleading Plaintiffs and third parties into relying upon them.

88. Plaintiffs and the insurers justifiably relied upon the material misrepresentations of Defendants when making the decision to undergo and pay for the surgeries.

89. As a direct and proximate result of the aforementioned, Plaintiff Cathy Beil did undergo multiple surgeries which were paid for in whole or in part by Plaintiff's commercial insurance, in addition to Plaintiffs' out of pocket expenses, and sustained grievous injuries, paralysis, new and different pain, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of ability to perform usual and customary activities and Plaintiff has incurred and will continue to incur substantial medical expenses and treatment.

**COUNT VII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

90. Plaintiffs incorporate adopt and re-allege as if fully restated herein, those allegations contained in the above paragraphs.

91. Defendants intended to, and in fact, caused emotional distress to the Plaintiff.

ELECTRONICALLY FILED 04/10/2013 16:02 / IFOJ / A 1302781 / CONFIRMATION NUMBER 239947

92. Defendants' conduct was so extreme and outrageous as to go beyond the bounds of decency and was such that the conduct can be considered utterly intolerable in a civilized society.

93. Defendant's conduct was the proximate and actual cause of the Plaintiff's psychiatric and emotional injuries, mental anguish, suffering, and distress.

94. The distress and anguish suffered by the Plaintiff is so serious and of a nature no reasonable man or woman could be expected to endure.

## COUNT VIII- SPOLIATION OF MEDICAL RECORDS EVIDENCE

95. Defendants willfully altered, destroyed, delayed, hid, modified, and/or spoiled ["spoiled"] Plaintiff's medical records, billing records, insurance paperwork, consent forms, and related evidence.

96. Defendants spoiled evidence with knowledge that there was pending or probable litigation involving the Plaintiff.

97. Defendants' conduct was designed to disrupt Plaintiff's potential and/or actual case, and did in fact, and proximately cause disruption, damages, and harm to Plaintiff.

## COUNT IX- LOSS OF CONSORTIUM & MEDICAL EXPENSES

98. Plaintiffs incorporate by reference each and every allegation contained paragraphs above.

99. At all times relevant, Plaintiffs Cathy Beil and Wayne Beil were married.

100. That as a result of the wrongful acts and omissions of the Defendants, Plaintiffs Cathy Beil and Wayne Beil were caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society, loss of affection, loss of

assistance, and loss of conjugal fellowship, all to the detriment of Plaintiffs' marital relationship.

101.   That all the aforesaid injuries and damages were caused solely and proximately by the acts and omissions of the Defendants.

AN AFFIDAVIT OF MERIT IS ATTACHED.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs demand judgment against Defendants on all claims. Plaintiffs further request:

1. Past medical bills;
2. Future medical bills;
3. Lost income and benefits;
4. Lost future income and benefits;
5. Loss of ability to earn income;
6. Past pain and suffering;
7. Future pain and suffering;
8. Plaintiff seeks a finding that their injuries are catastrophic under Ohio Rev. Code §2315.18;
9. All incidental costs and expenses incurred as a result of their injuries;
10. The damages to her credit as a result of their injuries;
11. Loss of consortium;
12. Punitive damages and adverse jury instructions;
13. Costs;
14. Attorneys' fees;
15. Interest;
16. All property loss;
17. All other relief to which she is entitled to.

Based upon this itemizations of damages, the damages sought exceed the minimal jurisdictional amount of this court.

ELECTRONICALLY FILED 04/10/2013 16:02 / IFOJ / A 1302781 / CONFIRMATION NUMBER 239947

Respectfully submitted,

_____
Eric C. Deters (38050)
ERIC. C. DETERS &
PARTNERS, PSC
5247 Madison Pike
Independence, KY 41051
Phone: (859) 363-1900
Fax: (859) 363-1444
eric@ericdeters.com

## JURY DEMAND

Plaintiffs hereby respectfully request trial by jury on all issues.

_____
Eric C. Deters (0038050)

ELECTRONICALLY FILED 04/10/2013 16:02 / IFOJ / A 1302781 / CONFIRMATION NUMBER 239947

IN THE COURT OF COMMON PLEAS
CIVIL DIVISION
HAMILTON COUNTY, OHIO

Cathy Beil, et al.  :  Case No.:

    Plaintiffs,  :  Judge

vs.  :  **AFFIDAVIT OF MERIT**

Abubaker A. Durrani, M.D., et al.,  :

    Defendants  :

**COUNTY OF MARION** )
                              ) ss.
**STATE OF INDIANA** )

    Rick C. Sasso, M.D., having been first duly sworn and cautioned, hereby states as follows:

    1.    I am an orthopaedic surgeon, licensed to practice medicine in the State of Indiana. I graduated from the Indiana University School of Medicine in 1986. I am board certified by the American Board of Orthopaedic Surgery.

    2.    I am presently a clinical professor and Chief of Spine Surgery at Indiana University School of Medicine and President of the Indiana Spine Group.

    3.    I am on the Editorial Board for several journals and have written chapters for approximately 46 books regarding spinal fusion techniques and made approximately 219 scientific presentations.

1

4.  I have reviewed the medical records regarding the care and treatment rendered to Cathy Beil. It is my opinion, based upon a reasonable degree of medical certainty, that the care and treatment rendered to Ms. Beil by Dr. Abubaker Durrani fell below the accepted standard of care, as alleged in the Complaint.

FURTHER AFFIANT SAYETH NAUGHT

_____
RICK C. SASSO

Sworn to and subscribed in my presence this 29 day of November, 2011.

_____
Notary Public

J:\Beil, Cathy\affid.sasso.wpd

2